UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | |
|---|---|
| JAMES HAROLD WILLIAMS, ) | Civil Action No.: 4:12-cv-0138-RMG-TER |
| ) | |
| Plaintiff, ) | |
| ) | |
| -vs- ) | |
| ) | |
| ) | **REPORT AND RECOMMENDATION** |
| ) | |
| CECILIA R. REYNOLDS, TANYA ) | |
| HUNTLEY, MARK STOKES, ) | |
| KRISTOPHER SWEET, CHANNELL, ) | |
| SHUMATE, WRIGHT, ALLISON ) | |
| McCASKILL, individually and in their ) | |
| official capacity; ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

## I.    INTRODUCTION

Plaintiff, who is proceeding pro se, was at all times relevant to this action in the custody of the South Carolina Department of Corrections (SCDC) and housed at the Kershaw Correctional Institution (Kershaw).  He brings this action pursuant to 42 U.S.C. § 1983, alleging claims of cruel and unusual punishment, failure to protect, unsanitary conditions of confinement and retaliation. Presently before the Court is Defendants' Motion for Summary Judgment (Document # 61).  All pretrial proceedings in this case were referred to the undersigned pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d), DSC.  Because this motion is potentially dispositive of Plaintiff's claims, this Report and Recommendation is entered for review by the district judge.

## II.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

Defendants argue that Plaintiff has failed to exhaust his administrative remedies as to the claims raised in his Complaint.  The Prison Litigation Reform Act ("PLRA") requires that a prisoner exhaust the available administrative remedies before filing a 1983 action concerning conditions of

his confinement. 42 U.S.C.1997e(a). In enacting the PLRA, Congress carved out an exception to the general rule that exhaustion of state remedies is not a prerequisite to filing a civil rights suit. The PLRA amended section 1997e so that it now provides, "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). Accordingly, before Plaintiff may proceed with his claims in this Court, he must first exhaust his administrative remedies available through the grievance process within the SCDC. The United States Supreme Court has held that "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." Booth v. Churner, 532 U.S. 731, 741, 121 S.Ct. 1819, 149 L.Ed.2d 958 (2001); see Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002); Jones v. Smith, 266 F.3d 399 (6th Cir.2001) (exhaustion required even though Plaintiff claimed futility); Larkin v. Galloway, 266 F.3 d 718 (7th Cir.2001) (exhaustion required even though Plaintiff claimed he was afraid); see also Claybrooks v. Newsome, 2001 WL 1089548 (4th Cir., September 18, 2001) (unpublished opinion) (applying Booth v. Churner to affirm district court's denial of relief to Plaintiff). A failure to exhaust all levels of administrative review is not "proper exhaustion" and will bar actions filed by inmates under any federal law, including § 1983. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2386, 165 L.Ed.2d 368 (2006).

The SCDC's grievance policy was recently delineated in Sweat v. Reynolds as follows:

In order to exhaust the SCDC administrative remedy process, after unsuccessful attempts at informal resolution of the problem(s), (1) an inmate must fill out a Form 10–5 (Step 1 Grievance form) to explain his complaint and give the form to an employee designated by the Warden within fifteen days of the alleged incident; (2) the grievance must then be entered into SCDC's automated system, and the Institutional Inmate Grievance Coordinator ("IGC") notified so that the information in the automated system can be finalized and an attempt to informally resolve it before sending it to the Warden can be made within ten working days from the time

>   the grievance is submitted; (3) the Warden should respond to the inmate in writing within forty days of the Warden's receipt of the Step 1 grievance and then the IGC has five working days to provide the Step 1 response to the inmate; (4) the inmate may then appeal the Warden's response by completing a Form 10–5a (Step 2 Appeal) and submitting it to the IGC within five "calendar days" of the inmate's receipt of the response; (5) the IGC then notifies the Inmate Grievance Branch of the Step 2 appeal and the Branch has another five "calendar days" to get the Step 2 appeal to the responsible SCDC official (the Division Director of Operations) for a response; (6) the Division Director of Operations then has sixty days from the day the appeal was received by the IGC at the institution to respond to the Step 2 grievance, and finally, (7) then there is another five days for the IGC to serve the inmate with the Step 2 response. SCDC Policy/Procedure GA–01.12, at §§ 11, 13.1–13.6 (Oct. 1, 2010). The decision of the "responsible official" who answers the Step 2 appeal is the Department's final response in the matter. Id. at § 13.6.

Sweat v. Reynolds, C/A No. 9:11–1706–MGL, 2013 WL 593660, *4 (D.S.C. February 15, 2013); see also Ceo v. Ozmint, 2006 WL 2850538, at *2 (D.S.C. Sept. 29, 2006) ("This court may take judicial notice of its own records in this prior case.") (citing Colonial Penn Ins. Co. v. Coil, 887 F.2d 1236, 1239 (4th Cir.1989) ("'[t]he most frequent use of judicial notice of ascertainable facts is in noticing the content of court records'")).

Defendants have the burden of showing that Plaintiff failed to exhaust his administrative remedies. See Anderson v. XYZ Correctional Health Services, Inc., 407 F.3d 674, 683 (4th Cir.2005) (inmate's failure to exhaust administrative remedies is an affirmative defense to be both pled and proven by the Defendant); Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 166 L.Ed.2d 798 (2007). Defendants argue that Plaintiff must appeal to the Administrative Law Court, and thereafter to the South Carolina Court of Appeals and Supreme Court to have fully exhausted his administrative remedies.

However, for purposes of the § 1997e(a) exhaustion requirement, the construction of the term "administrative remedies" to include appeals through the South Carolina Administrative Law Court process is overbroad. The pursuit of the South Carolina Administrative Law Court process would

-3-

invoke state judicial remedies. See James F. Flanagan, Redefining the Role of the State Administrative Law Judge: Central Panels and Their Impact on State ALJ Authority and Standards of Agency Review, Administrative Law Review 1355 (2002). In § 1983 matters Congress only intended that "administrative remedies" be satisfied. See, e.g., Pozo v. McCaughtry, 286 F.3d 1022, 1024 (7th Cir.2002) (Exhaustion under § 1997e(a) is administrative only; a prisoner who uses all administrative options that the state offers need not also pursue judicial review in state court), cert. denied, 537 U.S. 949, 123 S.Ct. 414, 154 L.Ed.2d 293 (2002); see also Johnson v. Ozmint, 567 F.Supp.2d 806, 820, n. 5 (D.S.C.2008); Duncan v. Langestein, No. 07–268, 2008 WL 153975 at * 5 (D.S.C. Jan.14, 2008) (citing Charles v. Ozmint, No. 05–2187, 2006 WL 1341267 at * 4 n. 4 (D.S.C. May 15, 2006) (recognizing that completion of prison grievance procedure exhausts administrative remedies and that § 1997(a) does not require inmates to further appeal to Administrative Law Court.) ); Ayre v. Currie, No. 05–3410, 2007 WL 3232177 at * 7 n. 5 (D.S.C. Oct.31, 2007); Lowry v. Davis, No. 06–509, 2006 WL 3759828 at * 2 (D.S.C. Dec.18, 2006) ("It is not necessary for the inmate to file an appeal with the state ALJ Division for matters pertaining to prisoner's conditions of confinement."). Thus, it is not necessary for Plaintiff to proceed to the state judicial system to have exhausted his administrative remedies.

Defendants also argue that Plaintiff had not yet received a final agency decision with respect to the excessive force claims he raised regarding the incidents that occurred on April 28, 2011. On May 4, 2011, Plaintiff filed a Step 1 grievance concerning the April 28, 2011, matters. Inmate Grievance Form, Step 1, KRCI – 0748-11. The matter was forwarded to the Division of Investigations for possible review due to the allegations of inappropriate actions by Sweet made in the grievance. Id. On June 6, 2011, Warden Reynolds responded to the grievance, stating the Division of Investigations had determined no further investigation was warranted. Id. Plaintiff then

filed a Step 2 grievance on June 20, 2011. Inmate Grievance Form, Step 2, KRCI–0748-11. At the time the Motion for Summary Judgment was filed, Plaintiff had not received a response to his Step 2 grievance. Hallman Aff. ¶ 5.

As set forth above pursuant to Sweat, once an inmate files a Step 2 grievance, the agency has sixty-five days from the date the grievance is received to provide the inmate with a response. Sweat, 2013 WL 593660 at *4. Plaintiff filed the present action on January 17, 2012, more than sixty-five days after he filed his Step 2 grievance. When a prisoner files a grievance and has not received a timely determination, the grievance may be considered exhausted under the PLRA. See Boyd v. Con. Corp. of America, 380 F.3d 989, 996 (6th Cir.2004) (concluding "administrative remedies are exhausted when prison officials fail to timely respond to a properly filed grievance"); Jernigan v. Stuchell, 304 F.3d 1030, 1032 (10th Cir.2002) (holding "we agree that the failure to respond to a grievance within the time limits contained in the grievance policy renders an administrative remedy unavailable."); Lewis v. Washington, 300 F.3d 829, 333 (7th Cir.2002) (agreeing that administrative remedies are deemed exhausted under the PLRA when prison officials fail to respond to inmate grievances); Foulk v. Charrier, 262 F.3d 637, 698 (8th Cir.2001) (holding "once [the prison] failed to respond to [the prisoner's written grievance], no further administrative proceedings were 'available' to him."); Powe v. Ennis, 177 F.3d 393, 394 (5th Cir.1999) ("A prisoner's administrative remedies are deemed exhausted when a valid grievance has been filed and the state's time for responding thereto has expired."). Thus, Plaintiff has exhausted his administrative remedies with respect to his claim of excessive force arising out of the incidents on April 28, 2011.

Defendants also argue that Plaintiff has failed to exhaust his administrative remedies with respect to Plaintiff's tray stacking complaint because Plaintiff failed to file a Step 1 grievance with respect to that issue. Plaintiff argues that he did file a Step 1 grievance, but it was returned

-5-

unprocessed because he failed to specify how and when informal resolution was attempted. However, Plaintiff fails to present a copy of the grievance. Nevertheless, even if Plaintiff did file a Step 1 grievance that was returned unprocessed, there is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance. See Woodford, 548 U.S. at 90–91 ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings."); see also Bryan v. S.C. Dept. of Corrs., No. 4:08–cv–1590–TLW–TER, 2009 WL 702864, at *3 (D.S.C. Mar.16, 2009) ("The fact that a grievance was unprocessed, without more, is insufficient to show that [the Defendants] prevented [the Plaintiff] from exhausting his administrative remedies."); Peoples v. SCDC, C/A No. 8:07–2897–CMC–BHH, 2008 WL 1902718, at *1 (D.S.C. Apr. 28, 2008) (finding that a returned and unprocessed grievance does not necessarily render remedies unavailable). Therefore, Plaintiff failed to exhaust his administrative remedies with respect to the tray stacking issue and, thus, the issue is not properly before the court.

Plaintiff also filed a Step 1 grievance concerning the alleged use of force on May 3, 2011. Inmate Grievance Form, Step 1, KRCI – 0756-11. This grievance was returned unprocessed as duplicate to issues raised in KRCI 0748-11 (discussed above with respect to the April 28, 2011 incidents). Id. There is no evidence that Plaintiff filed a Step 2 grievance or otherwise appealed the decision not to process the Step 1 grievance. Accordingly, for the same reasons set forth above, Plaintiff failed to exhaust his administrative remedies with respect to the May 3, 2011, alleged use of force and, thus, any claims arising out of that incident are not properly before the court.

Plaintiff also filed as Step 1 grievance on May 16, 2011, alleging that his cell was "trashed" by Officer Stokes on May 4, 2011. Inmate Grievance Form, Step 1, KRCI 0830-11. The responding

official stated Officer Stokes conducted a routine shakedown of Plaintiff's cell, but nothing was destroyed or damaged, and denied the grievance. Id. Plaintiff filed a Step 2 grievance, which was also denied. Id. Thus, this issue has been exhausted.

In sum, Plaintiff has exhausted his administrative remedies only as to his claims arising out of the incidents on April 28, 2011, and the alleged "trashing" of his cell on May 4, 2011. Plaintiff's other claims, including excessive force on May 3, 2011, deliberate indifference to serious medical needs following the May 3, 2011, incident, and the stacking of trays are not properly before the court and will not be discussed further.

**III.    FACTS**

    **A.    April 28, 2011, Incidents**

On the afternoon of April 28, 2011, Plaintiff was escorted to the shower by Defendants Sergeant Kristopher Sweet (Sweet) and Officer Wright (Wright). Pl. Aff. p. 29.[1] Plaintiff finished his shower and waited approximately twenty minutes for an officer to escort him out of the shower before screaming about being ready to leave. Id. Another ten minutes passed with no officer responding, so some of the inmates began showering again. Id. pp. 29-30. Officer Taylor then came to the shower area and turned off the showers without announcing that he was going to do so. Id. p. 30. Plaintiff requested to speak to Defendant Lieutenant Tanya Huntley (Huntley). Id. Approximately thirty to forty-five minutes later, Sweet arrived at the shower area. Id.

The incident report indicates that Sweet was called to the lower east wing showers by Defendant Officer Mark Stokes (Stokes) because Plaintiff was refusing to be restrained and leave

---

[1] Plaintiff files several separate Affidavits with his Response (Document # 71) to Defendants' Motion for Summary Judgment. The Affidavits do not include paragraph or page numbers and are filed as one attachment. Thus, for ease of reference, the undersigned will cite to the page number listed in the CM/ECF header.

the showers. Incident Report dated April 28, 2011, 3:30 pm (Ex. to Motion for Summary Judgment). Sweet gave Plaintiff two directives to back up to the shower bars to be restrained, but he would not comply. Id. Williams then stuck his hand through the bars in a threatening manner. Id. Sergeant Sweet administered his gas to Plaintiff's face, and Plaintiff was removed from the shower by Huntley. Id.

Plaintiff avers that Sweet came to the shower with his LE-10 drawn and threatened to administer the spray to anyone refusing to get dressed. Pl. Aff. p. 30. Plaintiff again asked to speak to Huntley, and Sweet administered the gas to the back of Plaintiff's head and the side of his face. Id. Sweet administered the gas three to four more times. Id. Plaintiff attempted to explain to Sweet that he still had soap on him and needed to rinse it off before he could get dressed. Id.

Plaintiff was charged with Threatening to Inflict Harm on an Employee. Incident Report dated April 28, 2011, 3:30 pm. Sweet's supervisor reviewed the Incident Report and approved of charging Plaintiff with Threatening to Inflict Harm. Id.

Following the shower incident, Plaintiff and Sweet were involved in another incident when Sweet was escorting Plaintiff down the Special Management Unit (SMU) stairs to the sick call room as a result of the gas used in the shower. Pl. Aff. p. 31. Plaintiff avers that Sweet grabbed Plaintiff's left arm without provocation and jerked him backwards, which caused Plaintiff to become off balance. Id. Sweet then jerked Plaintiff forward, causing Plaintiff to miss a step and twist his right ankle. Id. Plaintiff asked Defendant Officer Wright (Wright) if he saw "this treatment," and Wright responded "'I don't have anything to do with it.'" Id.

In the incident report, Sweet indicates that he and Wright were escorting Plaintiff down the SMU steps to medical. Incident Report dated April 28, 2011, 5:45 pm (Ex. to Motion for Summary Judgment). Sweet was holding Plaintiff's left upper arm as he escorted him when Plaintiff attempted

to break away and throw himself down the stairs. Id. Plaintiff was not successful in his attempt, and Sweet continued to escort Plaintiff to medical. Id.

Plaintiff visited sick call and was examined by Nurse Lackey following the shower and stairs incidents. Pl. Medical Records (Ex. to Motion for Summary Judgment). Lackey noted there was no skin blistering and minimal redness to the right side of Plaintiff's face. Id. She also noted Plaintiff's lungs were clear and his oxygen saturation was 99 percent. Id. Nurse Lackey further noted Plaintiff ambulated into medical with no limp. Id. She added there was minimal swelling and no bruising or deformity to his right ankle. Id.

### B.      May 4, 2011, Incident

Plaintiff asserts that while his was visiting the nurse on May 4, 2011, his cell was "trashed" by Officer Stokes. Inmate Grievance Form, Step 1, KRCI 0830-11. The official responding to Plaintiff's grievance stated Officer Stokes conducted a routine shakedown of Plaintiff's cell, but nothing was destroyed or damaged. Id.

### IV.     STANDARD OF REVIEW

The moving party bears the burden of showing that summary judgment is proper. Summary judgment is proper if there is no genuine dispute of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Summary judgment is proper if the non-moving party fails to establish an essential element of any cause of action upon which the non-moving party has the burden of proof. Celotex, 477 U.S. 317. Once the moving party has brought into question whether there is a genuine dispute for trial on a material element of the non-moving party's claims, the non-moving party bears the burden of coming forward with specific facts which show a genuine dispute for trial. Fed.R.Civ.P. 56(e); Matsushita Electrical Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574 (1986). The non-moving party

must come forward with enough evidence, beyond a mere scintilla, upon which the fact finder could reasonably find for it. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The facts and inferences to be drawn therefrom must be viewed in the light most favorable to the non-moving party. Shealy v. Winston, 929 F.2d 1009, 1011 (4th Cir. 1991). However, the non-moving party may not rely on beliefs, conjecture, speculation, or conclusory allegations to defeat a motion for summary judgment. Barber v. Hosp. Corp. of Am., 977 F.2d 874-75 (4th Cir. 1992). The evidence relied on must meet "the substantive evidentiary standard of proof that would apply at a trial on the merits." Mitchell v. Data General Corp., 12 F.3d 1310, 1316 (4th Cir. 1993).

To show that a genuine dispute of material fact exists, a party may not rest upon the mere allegations or denials of his pleadings. See Celotex, 477 U.S. at 324. Rather, the party must present evidence supporting his or her position by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed.R.Civ.P. 56(c)(1)(A); see also Cray Communications, Inc. v. Novatel Computer Systems, Inc., 33 F.3d 390 (4th Cir. 1994); Orsi v. Kickwood, 999 F.2d 86 (4th Cir. 1993); Local Rules 7.04, 7.05, D.S.C.

## V.     DISCUSSION

### A.     42 U.S.C. § 1983 Generally

Plaintiff brings this action pursuant to 42 U.S.C. § 1983. Section 1983 "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" Albright v. Oliver, 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994) (quoting Baker v. McCollan, 443 U.S. 137, 144, n. 3, 99 S.Ct. 2689, 61 L.Ed.2d 433 (1979)). A legal action

under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 707, 119 S.Ct. 1624, 143 L.Ed.2d 882 (1999). To be successful on a claim under § 1983, a plaintiff must establish two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. West v. Atkins, 487 U.S. 42, 48, 108 S.Ct. 2250, 101 L.Ed.2d 40 (1988).

**B.     Claims against Defendants in Their Official Capacities**

Defendants argue that any claims for monetary damages against them in their official capacity as employees of the SCDC should be dismissed. In Will v. Michigan Dept. of State Police, 491 U.S. 58, 71 (1989), the United States Supreme Court stated that a suit brought against "a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office." Suits against officials in their official capacity are simply another way of pleading an action against the entity for which the official is an agent. Monell v. Dept. of Social Servs., 436 U.S. 658, 690 (1978). Additionally, states and state agencies are not "persons" as defined by 42 U.S.C. § 1983 and therefore are not subject to suit under §1983. Will, 491 U.S. at 58. Further, the Eleventh Amendment to the United States Constitution bars a suit in federal court when the defendant is a state or a state agency. Alabama v. Pugh, 438 U.S. 781, 782 (1978). Plaintiff seeks "compensatory and punitive damages . . . in the total amount of $100,000." Thus, summary judgment is appropriate on his claims against Defendants in their official capacities.

**C.     Excessive Force**

Plaintiff argues that Defendant Sweet subjected him to cruel and unusual punishment through his use of excessive force on more than one occasion. The Eighth Amendment "protects inmates from inhumane treatment and conditions while imprisoned." Williams v. Benjamin, 77 F.3d 756,

761 (4th Cir.1996). The predominate focus in a claim for excessive force is not on the extent of the injury but rather the nature of and justification for the inflicted force. Wilkins v. Gaddy, 559 U.S. 34, 39, 130 S.Ct. 1175, 1179, 175 L.Ed.2d 995 (2010). The Eighth Amendment analysis requires inquiry as to whether a prison official "acted with a sufficiently culpable state of mind and whether the deprivation suffered or injury inflicted on the inmate was sufficiently serious (objective component)." Williams, 77 F3d at 761.

In an excessive force claim, a claimant must meet a heavy burden to satisfy the subjective component. Whitley v. Albers, 475 U.S. 312, 321, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986). The claimant must show that a correctional officer applied force "maliciously and sadistically for the very purpose of causing harm" rather than in a good faith effort to maintain or restore discipline. Id. (internal quotation marks omitted). The objective component is not as demanding because "[when prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated whether or not significant injury is evidenced." Wilkins, 559 U.S. at 37 (internal quotation marks omitted).

In an excessive force claim, the state of mind is "wantonness in the infliction of pain." Whitley, 475 U.S. at 322. In Whitley, the Supreme Court identified four factors to consider when determining whether a prison official's actions were carried out "maliciously and sadistically" to cause harm: (1) the need for application of force; (2) "the relationship between the need and the amount of force" used; (3) "the extent of the injury inflicted"; and (4) "the extent of the threat to the safety of staff and inmates as reasonably perceived by the responsible officials on the basis of the facts known to them." Id. at 321.[2]

---

[2]While the Supreme Court has "rejected the notion that 'significant injury' is a threshold requirement for stating an excessive force claim," this does not mean the extent or absence of serious injury is irrelevant. Wilkins, 559 U.S. at 37. Instead, the extent of injury suffered is just one

With respect to the shower incident on April 28, 2011, Sweet sets forth in the Incident Report that he was initially called to the showers because Plaintiff was refusing to be restrained and removed from the showers. When he arrived, he gave Plaintiff two directives to back up to the shower bars so he could be restrained. At that time, Plaintiff stuck his hand through the showers bars in a threatening manner and Sweet administered chemical munitions to Plaintiff's facial area.

Plaintiff avers that "at no time did Plaintiff or anyone threaten to inflict harm on themselves or anyone else." Pl. Aff. p. 30. However, Plaintiff does not deny refusing to be restrained after several directives to do so or sticking his hand through the bars. "Mace can be constitutionally used in small quantities to . . . control a 'recalcitrant inmate.'" Williams, 77 F.3d at 763 (citing Landman v. Peyton, 370 F.2d 135, 138 & n. 2 (4th Cir.1966), cert. denied, 388 U.S. 920, 87 S.Ct. 2142, 18 L.Ed.2d 1367 (1967); Bailey v. Turner, 736 F.2d 963, 968-69 (4th Cir.1984)). Even viewing the evidence in the light most favorable to Plaintiff, he was being recalcitrant when he refused to be restrained following several directives to that end. Thus, the court must turn to the relationship between the need for force and the amount of force used.

The "limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." Williams, 77 F.3d at 763. Consequently, a prison official's use of chemical munitions on an inmate to prevent disorder generally does not infringe the Eighth Amendment's prohibition against cruel and unusual punishment as long as the quantity of chemical munitions is commensurate with the gravity of the occasion. Bailey, 736 F.2d at 968. Whether the

---

factor to account for in the analysis, "but does not end it." See Hudson, 503 U.S. at 7 (holding "[t]he absence of serious injury is therefore relevant to the Eighth Amendment inquiry, but does not end it."). The extent of injury may also provide some indication of the amount of force applied. Wilkins, 559 U.S. at 37. A de minimis use of physical force does not violate the Eighth Amendment, "provided that the use of force is not of a sort repugnant to the conscience of mankind." Id. Thus, an inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Id.

use of chemical munitions on an inmate constitutes excessive force depends upon "the totality of the circumstances, the provocation, the amount of gas used, and the purposes for which the gas was used." Id. at 969. Here, Plaintiff avers that Sweet administered gas to his face four or five times. Sweet asserts that he administered a "one to two second burst" to Plaintiff's facial area. Incident Report dated April 28, 2011, 3:30 p.m. Regardless, of the number of "bursts" of gas, the record reveals that 35 grams were used during the shower incident. Report on the Use of Force dated April 28, 2011 (Ex. to Def. Motion). This court has found the use of similar amounts of gas "not constitutionally relevant." See, e.g., Plummer v. Goodwin, No. 8:07–2741–TLW–BHH, 2010 WL 419927, at *7 n. 4 (D.S.C. Jan.29, 2010) (unpublished) (finding the use of 33.5 grams of chemical munitions to be "not constitutionally relevant"); Robinson v. South Carolina Dept. of Corrections, No. 5:10-25930HMH-KDW, 2012 WL 851042, *7 (D.S.C. Mar. 13, 2012).

Additionally, the extent of the injury suffered by Plaintiff as a result of the gas used by Sweet is minimal. The nurse who examined Plaintiff following the gas used in the shower indicated on the Report on the Use of Force form that Plaintiff denied any problems as a result of being gassed. Report on the Use of Force dated April 28, 2011. She found no blistering of skin and minimal redness to the right side of his face, back of his neck and right, upper chest area. Id. Thus, although this lack of a significant injury is not conclusive of Plaintiff's claim, it is a relevant factor to consider.

Finally, although Plaintiff denies threatening to inflict harm on anyone, Sweet perceived Plaintiff's action of sticking his arm through the shower bars as being done in a threatening manner. In an excessive force action against a law enforcement officer, "the reasonableness of [the officer's] response must be gauged against the reasonableness of [his] perceptions, not against what may later be found to have actually taken place." Gooden v. Howard Cnty., Md., 954 F.2d 960, 965 (4th

Cir.1992). Here, it is undisputed that Sweet was called to the showers because Plaintiff refused to be restrained, ignored Sweet's directives to allow himself to be restrained, and stuck his arm out of the bars in what Sweet perceived to be a threatening manner.

In sum, with respect to Sweet's use of gas against Plaintiff in the shower area, the evidence in the record is insufficient to create an issue of fact with respect to whether Sweet used force maliciously and sadistically for the very purpose of causing harm. Thus, summary judgment is appropriate on this claim.

Next, Plaintiff alleges that Sweet used excessive force when he escorted him down the stairs to see the nurse following the shower incident. Plaintiff avers that Sweet jerked Plaintiff's arm while he was walking down the stairs in such a way as to cause Plaintiff to become off balance and twist his ankle. In the Incident Report, Sweet indicates that Plaintiff attempted to break loose from Sweet's grip and throw himself down the stairs. When he was seen by the nurse shortly thereafter, she noted that he ambulated into the office without a limp, although she did observe minimal swelling to the outside of his right ankle. Even viewing the facts in the light most favorable to Plaintiff, and assuming that Sweet did jerk Plaintiff in such a way as to throw him off balance, this incident fails to rise to the level of a constitutional violation. "Not 'every malevolent touch by a prison guard gives rise to a federal cause of action.'" Wilkins, 559 U.S. at 37 (citing Hudson v. McMillian, 503 U.S. 1, 9 112 S.Ct. 995, 117 L.Ed.2d 156 (1992)). Plaintiff fails to show that the force used by Sweet on the stairs is "of a sort repugnant to the conscience of mankind." Id. Thus, Plaintiff's claim of excessive force with the respect to the stairs incident fails as well.

### D.     Deliberate Indifference to a Serious Risk of Harm

Plaintiff fails to allege any act or omission on the part of Defendants Reynolds, Huntley, Channell, Shumate, and Wright other than their observation or knowledge of the events that

transpired between Plaintiff and Sweet. Plaintiff argues that these Defendants' observation or knowledge is sufficient to show deliberate indifference to a risk of harm. When determining whether a prison official who was not directly involved in an incident is nonetheless liable of a constitutional violation, the issue is whether an inmate who has suffered injury has alleged and offered evidence that the prison official "wantonly and obdurately failed to take precautions for [the plaintiff's] safety in deliberate indifference to a specific known risk of harm ...." Ruefly v. Landon, 825 F.2d 792 (4th Cir.1987). "The official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994). The Court further stated that "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." Id. at 838.

The obduracy and wantonness standard applies to prison officials in supervisory positions as well as to guards and corrections officers who deal with inmates directly. Thus, a supervisor must know of a specific risk or be aware of a pervasive risk of harm and act "wantonly, obdurately, or with deliberate indifference to that specific or pervasive risk of harm." Moore v. Winebrenner, 927 F.2d 1312 (4th Cir.), cert. denied, 502 U.S. 828, 112 S.Ct. 97, 116 L.Ed.2d 68 (1991).

Plaintiff fails to make a showing that these prison officials wantonly and obdurately failed to take precautions for his safety or showed deliberate indifference to a specific known risk of harm, that the officials were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and that they also drew the inference. Farmer, 511 U.S. at 838; Rich v. Bruce, 129 F.3d 336 (4 th Cir.1997) ("A defendant is not subjectively reckless where, although he is aware of the existence of a general risk, he is unaware that his conduct is inappropriate in light of that risk. True subjective recklessness requires knowledge both of the general risk, and also that the

-16-

conduct is inappropriate in light of that risk."). Thus, summary judgment is appropriate on this claim of deliberate indifference to a serious risk of harm.

### E.     Retaliation

Plaintiff also argues that Stokes "trashed" his cell on May 4, 2011, in retaliation for Plaintiff "bringing the illicit conduct of a prison guard to the attention of prison officials." Pl. Response p. 23. There is no evidence that any of Plaintiff's belongings were destroyed or taken. Bare assertions of retaliation do not establish a claim of constitutional dimensions. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir.1994). In order to state a claim for retaliation, an inmate must show that the alleged retaliation had an adverse impact on the exercise of his constitutional rights. Id. at 75. Plaintiff has not shown an adverse impact on the exercise of any of his constitutional rights. In fact, Plaintiff filed a grievance with respect to the trashing of his cell as well as for other perceived violations following the cell shakedown. Thus, Plaintiff fails to present evidence sufficient to sustain his retaliation claim and summary judgment is appropriate.

### F.     Qualified Immunity

Defendants also argue that they are entitled to qualified immunity on Plaintiff's claims. The Supreme Court in Harlow v. Fitzgerald, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. The Harlow Court held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Harlow, 457 U.S. at 818.

In addressing qualified immunity, "a court must first determine whether the Plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether

that right was clearly established at the time of the alleged violation." <u>Wilson v. Layne</u>, 526 U.S. 603, 609, 119 S.Ct. 1692, 143 L.Ed.2d 818 (1999); <u>see</u> <u>also</u> <u>Suarez Corp. Indus. v. McGraw</u>, 202 F.3d 676, 685 (4th Cir.2000). Further,"[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." <u>Wilson</u>, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist." <u>Porterfield v. Lott</u>, 156 F.3d 563, 567 (4th Cir.1998).

In <u>Maciariello v. Sumner</u>, 973 F.2d 295, 298 (4th Cir.1992), the Fourth Circuit Court of Appeals further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

As previously discussed, Plaintiff has failed to show that any Defendant violated any of his constitutional rights. However, to the extent there was a constitutional violation, a reasonable person in Defendants' positions would not have known that their conduct violated Plaintiff's constitutional rights. Thus, Defendants are entitled to qualified immunity for Plaintiff's claims against them in their individual capacities.

## VI.   CONCLUSION

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment (Document # 61) be granted and this case be dismissed in its entirety.

-19-

        s/Thomas E. Rogers, III
        Thomas E. Rogers, III
        United States Magistrate Judge

July 31, 2013
Florence, South Carolina

**The parties are directed to the important information on the following page.**